IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER ANTHONY WOOLEM, | ) | CRIM. NO. 13-00471 SOM |
| | ) | |
| Petitioner, | ) | ORDER DENYING MOTION |
| | ) | REQUESTING REDUCTION OF |
| vs. | ) | SENTENCE PURSUANT TO 18 U.S.C. |
| | ) | § 3582(c)(1)(A)(i) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION REQUESTING REDUCTION OF
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

**I.          INTRODUCTION.**

Christopher Anthony Woolem, a 38-year old drug felon,
is serving a 135-month prison sentence.  His projected release
date is 19 months away.  In light of the COVID-19 pandemic, he
seeks a compassionate release to home detention at his
grandmother's house in California, arguing in relevant part that
he has asthma and is close to being morbidly obese.  Woolem fails
to demonstrate "extraordinary and compelling reasons" justifying
compassionate release.  Accordingly, the court denies the motion
without prejudice to its being refiled should he be diagnosed
with a new medical condition such as cancer or diabetes, which he
says he might have.

**II.          BACKGROUND.**

In July 2014, Woolem pled guilty to two drug crimes--
1) conspiring to distribute and possess with intent to distribute
500 grams or more of a mixture and substance containing a

detectable amount of methamphetamine; and 2) attempting to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine. *See* Judgment in a Criminal Case, ECF No. 121.  Woolem admitted that his crime involved 6 pounds of "ice."  *See* ECF No. 94, PageID # 474 ("The actual weight of this delivery was 6 pounds."); ECF No 120 (minutes of sentencing proceeding indicating that the court adopted the Presentence Investigation Report); ECF No. 122, ¶ 25 (Presentence Investigation Report indicating that Woolem is accountable for 2.639 kilograms of ice, or about 5.82 pounds).  Woolem's Total Offense Level included a two-point enhancement based on his status as an organizer, leader, manager, or supervisor of criminal activity.  *See* Presentence Investigation Report ¶ 29, ECF No. 122, PageID # 734.

Woolem has been in custody since April 2013, more than 7 years.  *See* ECF No. 13.  He is at Florence Federal Correctional Institution ("FCI") in Colorado.  Given his presentence time credit and estimated good time credit, he has a projected release date of December 7, 2021, about 19 months from now.  *See* bop.gov/inmateloc/ (input Register Number 32815-112) (last visited May 19, 2020).  As of May 19, 2020, Florence FCI had 935 inmates, with an additional 373 inmates at the adjacent satellite camp.  *See* bop.gov/locations/institutions/flf/ (last visited May 19, 2020).  It is not entirely clear whether Woolem is at the FCI

or its adjacent satellite camp, but the court is assuming he is at the camp.  *See* ECF No. 139-2, PageID # 1060 (2017 Disciplinary Report indicating that Woolem was "found with two cans of chewing tobacco at satellite camp"); ECF No. 141-1, PageID # 1078 (May 26, 2020, email in which Woolem discusses the conditions at "florence fpc," which apparently refers to Florence Federal Prison Camp).

Woolem's motion indicates that he is 5'8" tall and weighs 255 pounds.  *See* ECF No. 131-1. PageID # 896.  According to the Centers for Disease Control and Prevention ("CDC") website, this gives Woolem a Body Mass Index ("BMI") of 38.8. *See* https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/ english_bmi_calculator/bmi_calculator.html.  The same website says, "COVID 19: Severe Obesity (a BMI of 40 or Higher) May Raise Risk of Severe Illness."  *Id.*  Woolem is 8 pounds short of having a BMI of 40.

Woolem's motion indicates that he has asthma and uses an Albuterol inhaler, as well as "another powerful inhaler," but continues to suffer from shortness of breath for which he sought treatment while at Florence.  *See* ECF No. 131-1. PageID # 896-97 (so stating in a publicly available filing and confirmed by sealed medical records); ECF No. 136, PageID #s 958, 974, 984-85. He says that he has a family history of diabetes, has an irregular heartbeat, and is scheduled to undergo an upper GI

3

endoscopy to determine whether he might have cancer or some other condition.  *Id.*

Nothing in the record establishes the severity of Woolem's asthma.

It does not appear that Florence has identified any case of COVID-19 in its inmate population.  *See* bop.gov/coronavirus (last visited May 19, 2020).  Woolem speculates in his Reply that the lack of COVID-19 cases at Florence might be because of a lack of testing.  *See* ECF No. 141, PageID # 1072 (asking the court to order the BOP to "provide a clear accounting of how many symptomatic and asymptomatic inmates and staff have been tested").

III.     **ANALYSIS.**

Woolem seeks a reduction of his sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), which allows defendants to move for sentence reductions based on "extraordinary and compelling reasons."  Woolem argues that if the virus gets into his facility, catching it might be a death sentence given his obesity, asthma severe enough to cause shortness of breath, irregular heartbeat, possible esophageal cancer, and possible diabetes.

Woolem seeks to serve the remainder of his sentence in home confinement at his grandmother's house in Wilmington, California.  Woolem's motion is denied without prejudice to its

being refiled if he can provide more detail about his medical
conditions, particularly the cancer and diabetes he may be
screened for.

Until the passage of the First Step Act of 2018, Pub.
L. No. 115-391, 132 Stat. 5194 (2018), amending 18 U.S.C.
§ 3582(c)(1)(A), only the Bureau of Prisons could move for relief
under § 3582(c)(1)(A).  The Act now allows such a motion by a
defendant:

> [T]he court, upon motion of the Director of
> the Bureau of Prisons, or upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that-
>
> (i) extraordinary and compelling reasons
> warrant such a reduction
>
>         . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

In other words, for the court to exercise its authority
under § 3582(c)(1)(A) to reduce a sentence, it must (1) find that

the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. (However, as discussed below, the Sentencing Commission's policy statements are in need of updating given the First Step Act.)

### A.   Woolem Exhausted His Prison Remedies.

There is no dispute that Woolem exhausted his prison remedies with respect to his request for a reduced sentence.  On April 15, 2020, Woolem asked his warden for compassionate release.  *See* ECF No. 131-3, PageID #931.  Twenty-seven days later, on May 12, 2020, Woolem moved in this court for compassionate release.  *See* ECF No. 128.  To avoid any exhaustion issue relating to whether Woolem should have waited 30 days before filing his motion in this court, Woolem refiled the motion 33 days after his request to the warden, noting that the warden had not acted on his request.  *See* ECF No. 131.  More than 30 days having passed since Woolem filed an administrative compassionate relief request with his warden, Woolem has exhausted his prison remedies.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).

The court notes that an official with the Bureau of Prisons ("BOP") says the BOP is evaluating all inmates for

release to home detention.  *See* Declaration of AnnElizabeth W. Card, ECF No. 139-1, PageID #s 1051-57.  She says that, "for public safety reasons" and "to ensure BOP is deploying its limited resources in the most effective manner"

> the BOP is currently assessing a number of factors to ensure that an inmate is suitable for home confinement including, but not limited to, reviewing the inmate's institutional discipline history for the last twelve months; ensuring that the inmate has a verifiable release plan; verifying that the inmate's primary offense is not violent, a sex offense, or terrorism related; and confirming the inmate does not have a current detainer.

*Id.*, PageID # 1056.  Woolem might consider submitting a home detention release plan to the BOP.

### B.   Woolem Fails to Establish on the Present Record Extraordinary and Compelling Reasons Warranting a Sentence Reduction.

Having determined that Woolem has exhausted his prison remedies before filing the present motion, the court turns to whether extraordinary and compelling reasons warrant a reduction of his sentence.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).

In enacting § 3582(c)(1)(A), Congress did not attempt to define "extraordinary and compelling."  *United States v. Marks*, 2020 WL 1908911, at *4 (W.D.N.Y. Apr. 20, 2020).  Instead, Congress authorized the United States Sentencing Commission to determine what "extraordinary and compelling reasons" would support the reduction of a sentence:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t).

The Sentencing Commission then promulgated U.S.S.G. § 1B1.13, which states:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that–

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

The comments to § 1B1.13 of the Sentencing Guidelines discuss four "extraordinary and compelling reasons" justifying a

reduction of a sentence: (1) the medical condition of the defendant; (2) the age of the defendant; (3) family circumstances requiring the defendant to perform caregiving functions; or (4) other reasons "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1.

The Sentencing Commission has not yet updated U.S.S.G. § 1B1.13 or its comments to reflect the First Step Act's allowance of a defendant to move for relief. It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has only had two voting commissioners. See, e.g., *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020). The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum. *Id.*

It is therefore not obvious that courts remain bound by what the Sentencing Commission has so far announced, especially because it is in considerable tension with the First Step Act. If read literally, the existing policy statement would only permit courts to determine whether an inmate fell into one of the three narrow categories of extraordinary and compelling circumstances identified by the Sentencing Commission. The fourth, "catch-all" provision only permits the Director of the Bureau of Prisons to determine whether other extraordinary and

compelling reasons exist.  The policy statement would therefore severely limit the authority conferred on the courts by the First Step Act.

Because of this tension, "courts are divided on whether they may disregard the stated deference to the Director of the Bureau of Prisons in determining what 'other reasons' would qualify as extraordinary and compelling." *Hirano v. United States*, 2020 WL 1861659, at *2 (D. Haw. Apr. 13, 2020).  There appears to be a growing consensus that "U.S.S.G. § 1B1.13 as currently written would not constrain [a court's] ability to find extraordinary and compelling reasons warranting a sentence reduction[.]" *United States v. Vo.*, 2020 WL 2300101, at *2 (N.D. Cal. May 7, 2020); *see also, e.g., United States v. Etzel*, 2020 WL 2096423, at *3 (D. Or. May 1, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

As this judge ruled in *U.S. v. Maka*, 2020 WL 2544408, at *3 (D. Haw. May 19, 2020),

> Those decisions are persuasive to this court. Section 3582(c)(1)(A) states that a court's finding of extraordinary and compelling reasons must be consistent with the Sentencing Commission's guidance.  Before Congress enacted the First Step Act, the Sentencing Commission determined that the BOP Director had wide discretion in determining

10

> whether extraordinary and compelling reasons
> existed.  That guidance is consistent with a
> recognition that courts now can exercise the
> same discretion.

In *Maka*, this court rejected the argument that a

prisoner's "vulnerability to COVID-19, standing alone,

constitutes an extraordinary and compelling reason that justifies

his immediate release," ruling that such an argument

> goes too far.  The compassionate relief
> statute cannot be a panacea for all of the
> problems facing prisons struggling to cope
> with COVID-19.  Not every vulnerable inmate
> is entitled to immediate release from prison.
> For instance, an inmate convicted of a
> violent crime who has just begun to serve a
> lengthy prison sentence may also be
> vulnerable to COVID-19, yet Congress may not
> have intended that such an inmate be released
> in light of the pandemic.

*Id.*  Nevertheless, this court recognized that,

> For some inmates, the pandemic may constitute
> an extraordinary and compelling reason that
> justifies a reduced sentence.  However, in
> determining whether extraordinary and
> compelling reasons justify a reduced
> sentence, Congress directed the courts to
> consider the factors set forth in 18 U.S.C.
> § 3553.  With its references to the
> circumstances of the offense and the history
> and characteristics of a defendant, § 3553
> suggests that courts should consider factors
> such as the severity of the underlying crime
> and the time remaining on an inmate's
> sentence before granting a request for
> compassionate relief that is based on the
> coronavirus.

*Id.* at *4.

11

The CDC currently lists the following as people who are at high risk for a severe illness from COVID-19:

*People 65 years and older[;]

*People who live in a nursing home or long-term care facility[;]

People of all ages with underlying medical conditions, particularly if not well controlled, including:

*People with chronic lung disease or moderate to severe asthma[;]

*People who have serious heart conditions[;]

*People who are immunocompromised

Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications[;]

*People with severe obesity (body mass index [BMI] of 40 or higher)[;]

*People with diabetes[;]

*People with chronic kidney disease undergoing dialysis[; and]

*People with liver disease[.]

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 22, 2020).

In relevant part, Woolem argues that he is at high risk of a severe case of COVID-19 because of his asthma.  While this court is fully prepared to recognize that COVID-19 may constitute

an extraordinary and compelling reason justifying a reduced sentence under certain circumstances presented by a particular inmate, this court is not prepared to say that Woolem's asthma constitutes an extraordinary and compelling reason on the current record.

The CDC explains, "People with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease." https://www.cdc.gov/coronavirus/2019-ncov/ need-extra-precautions/asthma.html (last visited May 22, 2020). The Mayo Clinic defines moderate persistent asthma as "Symptoms once a day and more than one night a week" and severe persistent asthma as "Symptoms throughout the day on most days and frequently at night." https://www.mayoclinic.org/ diseases-conditions/asthma/diagnosis-treatment/drc-20369660. The BOP similarly has guidelines regarding classifying the severity of asthma:

**Appendix 5.  Classifying Asthma Severity and Initiating Treatment**
*(for Patients Not Currently Taking Long-Term Control Medications)*

| Components of Severity[1] | | Classification of Asthma Severity | | | |
|---|---|---|---|---|---|
| | | Intermittent | Mild Persistent | Moderate Persistent | Severe Persistent |
| **Impairment** | Symptoms | ≤2 days/week | >2 days/week but not daily | Daily | Throughout the day |
| | Nighttime awakenings | ≤2x/month | 3–4x/month | >1x/week but not nightly | Often 7x/week |
| | Short-acting beta$_2$-agonist use for symptom control (not prevention of EIB) | ≤2 days/week | >2 days/week but not daily, and not more than 1x on any day | Daily | Several times per day |
| | Interference with normal activity | None | Minor limitation | Some limitation | Extremely limited |
| | Lung function *Normal FEV$_1$/FVC:* <20 yr  85% 20–39 yr  80% 40–59 yr  75% 60–80 yr  70% | • Normal FEV$_1$ between exacerbations • FEV$_1$ >80% predicted • FEV$_1$/FEV$_6$ normal | • FEV$_1$ >80% predicted • FEV$_1$/FEV$_6$ normal | • FEV$_1$ >60% but <80% predicted • FEV$_1$/FEV$_6$ reduced 5% | • FEV$_1$ <60% predicted • FEV$_1$/FEV$_6$ reduced >5% |
| **Risk** | Exacerbations requiring oral systemic corticosteroids | 0–1/year[2] | ≥2/year[2] | | |
| | | Consider severity and interval since last exacerbation. Frequency and severity may fluctuate over time for patients in any severity category. Relative annual risk of exacerbations may be related to FEV$_1$. | | | |
| **Recommended Step for Initiating Treatment[3]** (See *Appendix 6* for treatment steps.) | | For intermittent: **Step 1** | For mild persistent: **Step 2** | For moderate persistent: **Step 3** | For severe persistent: **Step 4, 5, or 6** |
| | | | | For Steps 3–6, consider adding short course of oral systemic corticosteroids. | |
| | | In 2–6 weeks, evaluate the level of asthma control that has been achieved and adjust therapy accordingly. | | | |

Key: **EIB** = exercise-induced bronchospasm; **FEV$_1$** = forced expiratory volume in 1 second; **FEV$_6$** = forced expiratory volume in 6 seconds; **ICU** = intensive care unit

https://www.bop.gov/resources/pdfs/asthma.pdf (last visited May 22, 2020).

While there is no dispute that Woolem has asthma, the court cannot discern from the record the severity of his asthma. This judge is not a medical professional and is not able to determine from the record whether Woolem has moderate or severe asthma.  Woolem's asthma assessment does not state the severity of the disease, noting instead that it is unspecified.  *See* ECF No. 136, PageID # 976.  And the court does need to consider how well even moderate or severe asthma is or is not being controlled by medication or other treatment, as well as any effect the treatment might have on complications arising from COVID-19.

14

Nor does the record establish that Woolem's other medical conditions put him at high risk of a severe case of COVID-19. Woolem says that he is obese, having a BMI of almost 39. However, the CDC has only indicated that people with severe obesity (BMI of 40 or higher) are at such a risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 22, 2020). Woolem says he is supposed to undergo tests to determine whether he has esophageal cancer or diabetes, which are both conditions that could put him at high risk of COVID-19 complications. But the possibility of having either condition is not the same as actually having the condition. *See* https://www.dana-farber.org/newsroom/news-releases/2020/multinational-study-identifies-high-risk-to-cancer-patients-diagnosed-with-covid-19/ (noting that the death rate for persons with cancer who contract COVID-19 is more than double that of all patients with COVID-19, and is worse for patients with measurable cancer, impaired physical abilities due to the cancer, and those with other conditions like hypertension and diabetes). Even if Woolem is diagnosed with either condition, the court would need to consider how effective any treatment is or is not in addressing the condition, and whether any treatment might increase or decrease the risk to Woolem. While Woolem's motion says he suffers from an irregular heartbeat, nothing in his medical records supports that

assertion.  In short, Woolem fails to establish on the present record that any of these medical conditions puts him at risk of a severe case of COVID-19.

Even assuming that the totality of Woolem's medical conditions constitute extraordinary and compelling reasons to warrant a sentence reduction, § 3582(c)(1)(A) requires this court to consider the factors set forth in section 3553(a) before releasing him to home confinement for the remainder of his sentence.  That section requires the court to impose a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" below:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments

made to such guidelines by act of Congress
(regardless of whether such amendments have
yet to be incorporated by the Sentencing
Commission into amendments issued under
section 994(p) of title 28); and
(ii) that, except as provided in section
3742(g), are in effect on the date the
defendant is sentenced; or
     (B) in the case of a violation of
probation or supervised release, the
applicable guidelines or policy statements
issued by the Sentencing Commission pursuant
to section 994(a)(3) of title 28, United
States Code, taking into account any
amendments made to such guidelines or policy
statements by act of Congress (regardless of
whether such amendments have yet to be
incorporated by the Sentencing Commission
into amendments issued under section 994(p)
of title 28);

(5) any pertinent policy statement--
     (A) issued by the Sentencing Commission
pursuant to section 994(a)(2) of title 28,
United States Code, subject to any amendments
made to such policy statement by act of
Congress (regardless of whether such
amendments have yet to be incorporated by the
Sentencing Commission into amendments issued
under section 994(p) of title 28); and
     (B) that, except as provided in section
3742(g), is in effect on the date the
defendant is sentenced.

(6) the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of similar
conduct; and

(7) the need to provide restitution to any
victims of the offense.

18 U.S.C.A. § 3553(a).

     The record indicates that Woolem was a nonviolent drug

offender and has already served a substantial prison sentence.

However, he was also an organizer, leader, manager, or supervisor

in a drug crime involving 6 pounds of methamphetamine.  *See* ECF
No. 13.  Woolem is being housed at a facility with no reported
COVID-19 cases (although that could be the result of a lack of
testing).  Critical to this court is Woolem's failure to present
a detailed plan for himself if he is released early.  He simply
says that he intends to live with his grandmother in Wilmington,
California, "who has agreed to the arrangement and has offered to
help him financially until he can support himself . . . as a
mechanic once he is permitted to do so."  ECF No. 131-1, PageID
#s 926-27.

Woolem has been disciplined while incarcerated,
although his infractions are several years old.  For example, on
January 29, 2017, Woolem was found with two cans of chewing
tobacco.  ECF No. 139-2, PageID # 1060.  In May 2015, Woolem
admitted "repaying another inmate" and being in possession of
"cutup cards used as poker chips."  *Id.*  In March 2015, he
refused to obey the order of a staff member  *Id.*  In October
2013, Woolem admitted he was gambling for push ups.  *Id.*, PageID
# 1061.

Having balanced the seriousness of Woolem's crime, the
amount of time remaining on his sentence, his behavior while
incarcerated, and the totality of the medical evidence he has
submitted, this court determines that Woolem has not so far shown
extraordinary and compelling reasons to be released early.

## IV.  **CONCLUSION.**

Woolem's motion for reduction of sentence is denied without prejudice to the renewal of the motion should he be diagnosed with a new medical condition.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 29, 2020.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

United States v. Woolem, CRIM. NO. 13-00471 SOM; ORDER DENYING MOTION REQUESTING REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)